UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARVEY FORD, MARK KINLEY,
VERNON LOVE and FRED PETRONE,          Index No.:

                    Plaintiffs,

        -vs-                                    **COMPLAINT**

COMBE INCORPORATED and COMBE
PRODUCTS, INC.,

                    Defendants.

Plaintiffs Harvey Ford, Mark Kinley, Vernon Love and Fred Petrone allege the following against Defendants Combe Incorporated and Combe Products, Inc.

## INTRODUCTION

1. This is an action for damages suffered by Plaintiffs as a direct and proximate result of Defendants' negligent and wrongful conduct in connection with designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the hair care products and hair dyes known as Just For Men®.

2. Just For Men® is a hair coloring product marketed to men. It is designed to color gray hair, including that on users' beards, mustaches, and sideburns.

3. Defendants market Just For Men® by appealing to men's desire to improve their appearance.

4. Though Just For Men® hair dye is a cosmetic solution to gray hair, its utility to aging men is vastly outweighed by the substantial risk that users will suffer burns, blisters, irritation, oozing, weeping, sores, rash, stinging, itching, swelling, and skin discoloration in reaction to an ingredient used in Just For Men®: p-Phenylenediamine

(herein "PPD").

5.      PPD has been identified as a common hair dye contact allergen for a number of years. Contact allergy to PPD can manifest as acute, subacute, or chronic dermatitis. The American Contact Dermatitis Society named PPD the 2006 "Allergen of the Year." Topical PPD exposure may cause primary sensitization, resulting in subsequent allergic contact dermatitis. Most reactions that occur are delayed hypersensitivity reactions. Earliest signs of allergic contact dermatitis can develop within one to three days of exposure to PPD in previously sensitized users and within four to fourteen days in non-sensitized patients.

6.      Despite the serious injuries that could occur to Just For Men® users, Defendants failed to adequately warn potential users of the serious risk of injury from using Just for Men.

7.      Before Plaintiffs were injured by Just for Men, Defendants had received countless claims and complaints about the injuries Just For Men® was causing its users. Defendants had received communications directly from consumers alleging that the product injured them in the same way that Plaintiffs were injured. Defendants also had been sued by thousands of consumers who alleged that Just for Men injured them. Defendants also were aware of numerous reports of injuries associated with PPD from the medical and scientific literature, from trade groups and associations, from consumer web sites, and from reports to Defendants' own Just for Men website. In fact, rather than properly disclose reports of injuries associated with Just for Men, Defendants paid consultants to remove web postings and social media postings about injuries associated with Just for Men.

8.      Before Plaintiffs were injured by using Just for Men, Defendants failed to remove, or reduce the amount of, PPD from the dangerous Just for Men product or replace the PPD with a safer ingredient, failed to adequately warn consumers about the dangers of the product, and failed to adequately instruct users about how to test the product and how to

use it.

9.      Plaintiffs in this action used Just For Men® and suffered severe injuries as a result of Defendants' product. Plaintiffs bring claims for product liability, breach of express and implied warranty, negligence, negligent misrepresentation and fraud, and violations of New York General Business Law, sections 349 and 350.

## PARTIES

**Plaintiffs:**

10.      Plaintiff Harvey Ford is, and was at all times herein alleged, a citizen of the State of Louisiana and currently resides in Lafayette, Louisiana. Mr. Ford purchased and used Just For Men® in Lafayette, Louisiana, including in March 2019 when he was injured by using the product. Mr. Ford applied Just For Men® as directed on the instructions and suffered a severe reaction to Just For Men® including redness, irritation, oozing, weeping, sores, blisters, burning, rash, stinging, itching, skin discoloration, and swelling.

11.      Plaintiff Mark Kinley is, and was at all times herein alleged, a citizen of the State of Kentucky and currently resides in Danville, Kentucky. Mr. Kinley purchased and used Just For Men® in Gainesville, Kentucky in October 2017. Mr. Kinley applied Just For Men® as directed on the instructions and suffered a severe reaction to Just For Men® including redness, irritation, oozing, weeping, sores, blisters, burning, rash, stinging, itching, skin discoloration, and swelling.

12.      Plaintiff Vernon Love is, and was at all times herein alleged, a citizen of the State of Texas and currently resides in Waxahachie, Texas. Mr. Love purchased and used Just For Men® in Waxahachie, Texas in July 2018. Mr. Love applied Just For Men® as directed on the instructions and suffered a severe reaction to Just For Men® including redness, irritation, oozing, weeping, sores, blisters, burning, rash, stinging, itching, skin

discoloration, and swelling.

13.     Plaintiff Fred Petrone is, and was at all times herein alleged, a citizen of the State of New Hampshire and currently resides in Portsmouth, New Hampshire. Mr. Petrone purchased and used Just For Men® in Portsmouth, New Hampshire in March 2018. Mr. Petrone applied Just For Men® as directed on the instructions and suffered a severe reaction to Just For Men® including redness, irritation, oozing, weeping, sores, blisters, burning, rash, stinging, itching, skin discoloration, and swelling.

**Defendants:**

14.     Defendant Combe Incorporated is a Delaware corporation which has its principal place of business at 1101 Westchester Ave., White Plains, New York 10604. At all times relevant hereto, Defendant Combe Incorporated was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Just For Men® hair care and dye products. Defendant Combe Incorporated was present and doing business in the State of New York. Defendant Combe Incorporated, transacted, solicited, and conducted business in New York and derived substantial revenue from such business. At all times relevant hereto, Defendant Combe Incorporated expected or should have expected that its acts would have consequences in New York.

15.     Defendant Combe Products, Inc. is a Delaware corporation which has its principal place of business at El Duque Industrial Park Carr, 971 Calle A, Naguabo, Puerto Rico 00718. At all times relevant hereto the Defendant Combe Products, Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Just For Men® hair care and dye products. Upon information and belief, at all relevant times, Defendant Combe Products, Inc. was

present and doing business in the State of New York and its executive officers had offices in New York and made the decisions at issue in the case in New York (including the decision to continue selling Just for Men even after they had numerous reports about injuries associated with the product). At all relevant times, Defendant Combe Products, Inc. transacted, solicited, and conducted business in the State of New York and derived substantial revenue from such business. At all times relevant hereto, Defendant Combe Products, Inc. expected or should have expected that its acts would have consequences within New York

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction of this civil action pursuant to 28 U.S.C.§ 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

17.    This Court has personal jurisdiction over Defendants pursuant to and consistent with the Constitutional requirements of Due Process in that Defendants, acting through their agents or apparent agents, committed one or more of the following:

> a.    transacted business within the state;
>
> b.    made any contract within the state;
>
> c.    committed a tortious act within this state; and
>
> d.    owned, used, or possessed any real estate situated within this state.

18.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendants because Defendants are present in this state and District, such that requiring an appearance does not offend traditional notions of fair play and substantial justice. Defendant Combe Incorporated's principal place of business is located in White Plains, New York and Defendant Combe Products, Inc.'s executive officers are located in this District and made the decisions at issue

in this case in this District.

19.    Requiring Defendants to litigate these claims in New York and in this District does not offend traditional notions of fair play and substantial justice.

20.    Plaintiffs' claims arise in part from conduct Defendants purposefully directed to New York. On information and belief, Defendants' Just For Men® hair care products and dyes are sold at hundreds of local and national retailers, including Wal-Mart, Target, Walgreens, CVS, and Duane Reade throughout the State of New York. On information and belief, Defendants avail themselves of numerous advertising and promotional materials regarding their defective products specifically intended to reach consumers in New York, including advertisements on local television programs and radio broadcasts, billboards and in print publications delivered to consumers in the State of New York.

21.    Venue is properly set in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred within this District, and because Defendants reside in this District.


## FACTUAL ALLEGATIONS

22.    Just For Men® is a cosmetic hair care dye intended to improve appearance and alter hair and facial hair color.

23.    Defendants have developed, designed, formulated, manufactured, packaged, labeled, advertised, marketed, instructed on, warned about, distributed and sold Just For Men® hair care and dye products since at least 1987.

24.    Defendants failed to adequately warn against the negative effects and risks associated with this product including, but not limited to, long term usage and the cumulative effects of long term usage, even if the consumer used the product as directed, as alleged below.

25.    Defendants knew or should have known that Just For Men® products create an unnecessary risk of burns, scarring, allergic reactions, anaphylactic shock, skin depigmentation, and other severe injuries with use, including prolonged and cumulative usage.

26.    In omitting, concealing, and inadequately providing critical safety information regarding the use of Just For Men® in order to induce its purchase and use, Defendants engaged in and continue to engage in conduct likely to mislead consumers including Plaintiffs. This conduct is fraudulent, unfair, and unlawful.

27.    Defendants, the self-proclaimed "champions of facial hair," knew or should have known that Just For Men® created an increased risk of injury but Defendants failed to disclose to consumers, including Plaintiffs, the risk of injury, rates of adverse reaction, and other problems known to Defendants.

28.    Defendants boast that Just For Men® products are backed by "three decades of research and have delivered great results over 50 million times" despite Defendants' knowledge that thousands of consumers are severely and permanently injured each year by Defendants' Just For Men® products. Further, Defendants' statement is inaccurate, misleading, and not supported by any scientific facts or knowledge.

29.    Defendants knew or should have known that the chemicals in their Just For Men® products, including p-Phenylenediamine (herein "PPD"), are associated with health risks yet Defendants did not adequately warn consumers, including Plaintiffs.

30.    Just For Men® is permanent hair coloring which utilizes oxidation in the dying process.

31.    The EPA lists links between PPD and several acute and chronic injuries including:

    a.    Severe dermatitis;

    b.  Renal failure;

    c.  Acute contact dermatitis;

    d.  Vitiligo;

    e.  Convulsions and comas; and

    f.  Eczematoid contact dermatitis.

32.    Defendants failed to warn about several of the conditions listed in the preceding paragraph. To the extent there is any warning at all as to other conditions listed above, that warning is inadequate and improperly downplays the substantial risk posed by the product.

33.    In 2006, PPD was named allergen of the year by the American Contact Dermatitis Society.

34.    PPD is one of five substances listed as a "strong sensitizer" by the Consumer Product Safety Commission.

35.    As defined by 16 CFR 1500.13, "strong sensitizer" substances have a significant potential for causing hypersensitivity.

36.    Throughout Europe PPD is widely known as an "extreme sensitizer."

37.    Defendants place no restrictions concerning cumulative or repeated use of their products or PPD on their packaging, despite the known risks of repeated exposure to their products and PPD.

38.    Defendants knew or should have known that more than 5% of the population will have an adverse reaction to PPD, yet Defendants concealed and withheld this information from the public.

39.    PPD has been linked to severe and sudden allergic reactions, including serious skin irritation, anaphylaxis and even death.

40.    Defendants do not properly warn consumers on their product labels, inserts, or

marketing materials that PPD in Just For Men® products can cause injuries, anaphylaxis and death.

41.    Defendants knew or should have known about the increased risk created by cumulative use, but Defendants failed to put instructions or warnings on the product related to such use or the number of times a person could use their Just For Men® products safely.

42.    Although Defendants instruct users to conduct a preliminary test to help determine whether a user will have an adverse reaction to Defendants' product, the preliminary test Defendants recommend and the directions and instructions for its administration are inadequate.

43.    Defendants recommend a self-applied "skin patch test" on a consumer's arm prior to use. Defendants recommend this test despite knowing that facial skin is more sensitive and may react differently than the arm or other parts of the body. Defendants provide no guidelines on how to test their Just For Men® products on a consumer's face prior to use.

44.    Defendants knew or should have known that their skin patch test is an inadequate method to determine if a user will have an adverse reaction to PPD.

45.    The universal standard for identifying skin allergies, including acute contact dermatitis to PPD, is the patch test which is administered and monitored by a dermatologist or similar trained medical professional over 7-10 days.

46.    During a patch test, a trained medical professional places small quantities of known allergens on the patient's back. The test areas are then covered with special hypoallergenic adhesive tape so the patches stay in place undisturbed for 48 hours.

47.    Generally, a patch test administered by a medical professional requires two to three appointments so that the reactions can be carefully monitored by the dermatologist.

48.    Despite the knowledge that more accurate patch tests conducted by trained

medical professionals are done over the course of several days or even weeks, Defendants wrongly and negligently fail to advise Just For Men® consumers of the benefits of having a patch test done by a medical professional.

49.    In December 2007, the European Commission Scientific Committee on Consumer Products released an Opinion titled "Sensitivity to Hair Dyes – Consumer Self Testing." The Committee concluded that at home skin tests, given for the purpose of providing an indication as to whether an individual consumer may or may not have a contact allergy to hair dye chemicals, were unreliable. The committee specifically found that:

a. Self-Testing leads to misleading and false-negative results thus giving individuals who are allergic to hair dye substances the false impression that they are not allergic and not at risk of developing an allergic reaction by dyeing their hair;

b. There is a potential risk that "self-tests" result in induction of skin sensitization to hair dye substances;

c. The self-test recommendations were not standardized and uncontrolled allowing for large variations in dose, number of applications, and duration of exposure;

d. False negative results from self-testing are considered to be the largest problem;

e. 48 hours is known to be too short as patch test reactions may develop up to seven days after application;

f. Self-test locations on the arm or behind the ear are not reliable, while patch testing done on the back is good for reproducibility; and

g. Self-tests are not performed or observed by trained observers.

50.    Defendants do not warn or disclose that self-testing, such as the test

recommended by Defendants, is not as effective or reliable as a doctor performed test as described elsewhere in this Complaint.

51.     Nowhere on their product packaging or inserts, webpage, or marketing materials do Defendants recommend that consumers undergo a patch test with a dermatologist before using Just For Men® products.

52.     Defendants advise that a consumer "not wash, cover, or disturb the test area for 48 hours." The burden to comply with Defendants' version of an allergy test is too high and essentially unfeasible. The risk of accidental contamination renders the "test" useless.

53.     For example, during Defendants' version of an allergy test, for two days, consumers are unrealistically expected to:

       a.   Not shower;

       b.   Not wear long sleeve shirts;

       c.   Not accidentally rub against anything;

       d.   Not sweat; and

       e.   Not close the elbow.

54.     Defendants knew or should have known that a percentage of consumers would have an allergic reaction to their products but Defendants failed to advise consumers to undergo proper allergy testing before using their products.

55.     Despite knowing that a certain percentage of the population would have an allergic reaction to their products, Defendants failed to warn or disclose such rates of reaction to consumers and the public in general.

56.     Defendants knew or should have known that their recommended skin patch test is inadequate to accurately identify potential reactions to their products.

57.     Defendants knew or should have known that their test was not adequate because:

a. the instructions and directions for use did not disclose that Defendants' at-home test was not a substitute for a patch-test administered or monitored by a trained medical professional and that more accurate results could be obtained by a test administered by a trained medical professional;

b. the risk that the test would be performed in the wrong area;

c. the risk that the amount of product used would be wrong;

d. the arm is not the appropriate location for a skin allergy test;

e. the risk of false negatives or false positives is high;

f. the area that is tested is not covered or protected during the test;

g. the risk that the product would be disturbed by clothing or daily activities is high; and

h. Defendants were receiving numerous reports from consumers (including lawsuits) alleging that they were injured despite performing the test that Defendants recommend.

58.    Consumers, including Plaintiffs, detrimentally relied on Defendants' instructions and patch test.

59.    Defendants knew or should have known that it is highly unlikely that a consumer would be able to perform Defendants' version of the patch test properly and obtain reliable results.

60.    In addition, Defendants knew or should have known that sensitization to PPD during a skin patch test is likely to occur in a certain percentage of the population.

61.    When sensitization occurs during a patch test, the consumer will have a late reaction to the PPD more than 48 hours, or not at all, after exposure rendering the Defendants' testing procedure useless.

62.    Due to sensitization during a patch test, it is possible for consumers to have a

negative skin patch test result and still have a severe reaction to Defendants' products.

63.    Despite this, Defendants do not warn or disclose the risks of sensitization during a skin patch test.

64.    Defendants provide inadequate instructions on how to combine the Color Base and Color Developer before application. Defendants use ambiguous words such as "small" and "equal" parts but provide no tools or methods to measure the actual amount of each chemical or to ensure that equal amounts are being applied.

65.    Defendants provide no instructions on what is meant by a "small" amount of chemicals, leaving the consumer to guess at the proper testing procedure.

66.    Without precise measuring tools, it is impossible to determine if "equal" amounts of each chemical are being mixed for application.

67.    Even if the product's patch test was adequate and reliable, which it is not, the vague, ambiguous, and inadequate instructions for its use render the test inadequate at best and useless at worst.

68.    Defendants fail to warn or disclose the probability that a user will have an adverse reaction to Just For Men® products.

69.    Defendants spend millions of dollars to advertise nationally via television and internet, but do not warn about any adverse reactions on their website or their television commercials.

70.    Rather than provide information on the Just for Men web site disclosing the dangers of Just for Men, Defendants paid consultants to remove information from the Just for Men web site in which consumers alleged that they had been injured after using Just for Men.

71.    There are safer and cheaper alternatives to PPD available to Defendants for use in Just For Men® products. However, despite the known risks of PPD, Defendants

continue to use PPD in their products.

72.    Safer known alternatives include Henna-based hair dyes, para-toluenediamine sulfate hair dyes, and other dyes.

73.    Defendants could also have reduced the PPD concentration to a minimum level.

74.    Defendants fail to warn about or disclose the true nature and extent of the risk of serious adverse reactions posed by Just For Men® products in the general population of users or consumers.

75.    Defendants also fail to warn or disclose that certain colors of Just For Men® products contain an increased amount of PPD posing a greater risk of an adverse reaction for consumers who use those particular colors.

76.    Furthermore, Defendants fail to warn or disclose that African American consumers are at dramatically higher risk of an acute reaction to PPD than those of Caucasian decent.

77.    In 2001 a study performed by the Cleveland Clinic concluded that the sensitization rate of PPD in African American users overall (men and women) was 10.6% versus 4.5% in Caucasians. The study further concluded that the sensitization rate of PPD in African American men in particular was 21.2% compared to 4.2% in Caucasians.

78.    Just For Men® products have an unacceptable and unreasonable rate of adverse reaction in the general population. Further, the unacceptable and unreasonable rate of adverse reaction is even higher in certain population groups, such as African American men.

79.    Despite knowing that the overall population of consumers were already at an increased risk of experiencing an adverse reaction to PPD, and that African American men in particular were five times as likely to experience an adverse reaction to PPD, Defendants aggressively targeted the African American community in their marketing and advertising.

80.    In fact, PPD is now known as one of the most, if not the most, common allergens in the African American population, even rivaling nickel which is the leading cause of Allergic Contact Dermatitis ("ACD") in the world.

81.    In addition, other scientific studies have found increased sensitization rates to predominately dark-haired populations including 11.5% in India and 15.2% in Spain.

82.    Defendants knew or should have known that consumers were at a greater risk of experiencing an adverse reaction while using PPD compared to other hair dye products, and Defendants knew or should have known that consumers with darker hair, including African Americans, were at an even greater risk of experiencing an adverse reaction to PPD.

83.    Despite this knowledge, Defendants failed to warn or disclose to their consumers that the consumers were exposed to a significantly increased risk of suffering an adverse reaction.

84.    Defendants also knew or should have known that there is a substantial likelihood of serious bodily injury when using Just For Men® products because they contain PPD. However, Defendants failed to warn or disclose this to consumers and the public in general.

85.    Instead, Defendants represented that their product was safe and effective when used as directed even though Defendants knew or should have known that their 48 hour allergy test was flawed and ineffective.

86.    Defendants also failed to warn or disclose to consumers and the public in general that African Americans are more than two times as likely to have a severe reaction to their products as other consumers, and that African-American men are five times more likely to have such a reaction.

87.    Defendants' warning label for Just For Men® inadequately addresses and warns of potential adverse health risk associated with the use of the product, as set forth in

this Complaint. Even when such risks are mentioned, they are minimized and downplayed, further reducing the utility, if any, of the products' warnings.

88.    Defendants actively marketed Just For Men® to consumers knowing that it would cause serious and severe reactions to consumers and failed to warn or disclose this fact to consumers and the public in general.

89.    Defendants have an internal claims process in place to obtain liability releases and compensate consumers who are injured by Just For Men® products.

90.    Defendants' claim process is in place to cover up any problems associated with their Just For Men® products and prevent consumers who are injured from taking legal action.

91.    Plaintiffs are unaware of a single clinical trial or study performed by Defendants related to the injury rate and/or safety of any of their Just For Men® products.

92.    Defendants have a duty to monitor the safety of their products and it is reasonable for them to conduct multiple clinical trials and/or studies related to the safety of their Just For Men® products. However, Defendants have failed to do so.

93.    Defendants knew or should have known of the high number of adverse reactions and injuries related to their Just For Men® products from a multitude of sources, including their internal claims process and the fact that Defendants had been sued by hundreds of consumers alleging that they were injured by Just For Men® products, making Defendants' failure to conduct any studies or clinical trials particularly egregious.

94.    Defendants have offered to pay the medical costs of certain consumers injured by their products.

## COUNT I
## STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT

95.     Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

96.     Defendants manufactured, supplied, promoted, marketed, distributed and/or sold Just For Men® products.

97.     As the manufacturer, supplier, promoter, distributor, marketer and seller of Just For Men® products, each Defendant placed into the stream of commerce a product that when used for its intended purpose or reasonably intended purpose was dangerous and defective.

98.     The Just For Men® products which were manufactured, supplied, promoted, distributed, and sold by Defendants were defective and unreasonably dangerous when each Defendant placed it into the steam of commerce.

99.     Upon information and belief, one or more "lots" and/or "batches" of Just For Men® were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specifications posing a serious risk of injury.

100.    Plaintiffs used Just For Men® for the purpose and in the manner normally intended by Defendants.

101.    Just For Men® caused Plaintiffs' injuries and Defendants were a substantial factor in causing that harm.

102.    Additional information concerning any defective manufacture is in the exclusive custody and control of Defendants.

103.    As a direct and proximate result of the foregoing, each Plaintiff is entitled to damages from Defendants exceeding the jurisdictional minimum for diversity jurisdiction. Furthermore, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## COUNT II
## STRICT PRODUCTS LIABILITY: DESIGN DEFECT

104.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

105.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of hair care products and hair dyes, including Just For Men®.

106.    The Just For Men® manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and it was more dangerous than an ordinary consumer would expect.

107.    The Just For Men® that Plaintiffs used had not been materially altered or modified prior to their use.

108.    Just For Men® is also defectively designed because it contains the unreasonably dangerous ingredient PPD, though there are reasonably safer and effective alternatives to hair dye that do not include PPD.

109.    Just For Men® is also defectively designed because it causes an unreasonably high rate of adverse dermatological and other reactions in the general populace and even more so to darker-skinned populations, especially Africans Americans.

110.    Just For Men® is also defectively designed because the patch test suggested by Defendants, and the method by which Defendants have chosen to instruct users to conduct the patch test, is unreasonable, unsafe, unreliable, and ineffective.

111.    Just For Men® is also defectively designed because the patch test, and the method by which Defendants have chosen to instruct users to conduct it, imposes unreasonable and unrealistic standards on users, greatly limiting the effectiveness of the tests. These problems include the unreasonable instruction to leave the tested area of skin uncovered and undisturbed when the risk of contamination is unreasonably high.

18

112.   Just For Men® is also defectively designed because its cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

    a.   Just For Men® products fail to warn of the rates of adverse reaction among the general population and among certain population groups, such as African Americans;

    b.   Defendants minimize and downplay the risks associated with Just For Men® hair dye that they chose to disclose;

    c.   Just For Men® products fail to advise their users of the benefits of undergoing a patch test conducted by a medical professional;

    d.   Just For Men® products fail to display and advise of the product's risks, proper use, or need to conduct a patch test in an effective and reasonable manner;

    e.   Just For Men® products fail to provide adequate or reasonable instructions as to the use of the patch test included with the product; and

    f.   Just For Men® products fail to advise users that the patch test, as Defendants have chosen to instruct users to conduct it, has problems with reliability, sensitization, and effectiveness, among others.

113.   By marketing a product designed such that it was not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendants were a substantial factor in causing Plaintiffs' injuries.

114.   As a direct and proximate result of Plaintiffs' use of Just For Men® as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiffs individually suffered harm, damages and economic loss exceeding the jurisdictional minimum for diversity jurisdiction and will continue to suffer

such harm, damages and economic loss in the future.

115.    As a direct and proximate result of the foregoing, each Plaintiff is individually entitled to damages exceeding the jurisdictional minimum for diversity jurisdiction. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

**COUNT III**
**STRICT PRODUCTS LIABILITY: FAILURE TO PROVIDE ADEQUATE**
**WARNING**

116.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

117.    The Just For Men® manufactured and supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers of such risks.

118.    Defendants knew or, in the exercise of reasonable care, should have known that hair care products and dyes such as Just For Men® that are marketed to be used repeatedly as a cosmetic hair product present a risk of severe reactions and permanent scarring and other adverse reactions in large numbers.

119.    Defendants failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of Just For Men®, in light of the likelihood that the product would cause the harm claimed by Plaintiffs and in light of the likely seriousness of that harm.

120.    Defendants, as the manufacturers of Just For Men®, are held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty to warn consumers of the dangers associated with Just For Men® and failed to do so.

121.    Defendants failed to reasonably or adequately warn users of the risks of Just

For Men® for the following reasons, among others:

    a.  Just For Men® products fail to warn of the rates of adverse reaction among the general population and among certain population groups, such as African Americans;

    b.  Defendants minimized and downplayed those risks associated with Just For Men® hair dye that they chose to disclose;

    c.  Just For Men® products failed to advise users of the benefits of undergoing a patch test conducted by a medical professional;

    d.  Just For Men® products fail to display and advise of the product's risks, proper use, or need to conduct a patch test in an effective and reasonable manner;

    e.  Just For Men® products fail to provide adequate or reasonable instructions as to the use of the patch test included with the product; and

    f.  Just For Men® products fail to advise users that the patch test, as Defendants have chosen to instruct users to conduct it, has problems with reliability, sensitization, and effectiveness, among other problems.

122.    The Just For Men® manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of Just For Men®, Defendants failed to provide an adequate warning to consumers of the product, knowing the product could cause serious injury as set forth herein.

123.    Plaintiffs read and followed the deficient directions that were provided with Defendants' Just For Men® products. Defendants' inadequate directions and packaging were a substantial factor in causing Plaintiffs' injuries. As a direct and proximate result of Plaintiffs' use of Just For Men® as designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, each Plaintiff individually suffered harm, damages,

and economic losses exceeding the minimum amount for diversity jurisdiction and will continue to suffer such harm, damages, and economic loss in the future.

124.   As a result of Defendants' failure to adequately warn Plaintiffs, each Plaintiff is entitled to damages from Defendants exceeding the minimum amount for diversity jurisdiction. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## COUNT IV
## NEGLIGENCE

125.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

126.   Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing, and distribution into the stream of commerce of Just For Men® products, including a duty to insure that Just For Men® did not pose a significantly increased risk of injury to Plaintiffs and other consumers.

127.   Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Just For Men® products. Defendants knew or should have known that hair dye that is marketed to be used on a regular basis to improve cosmetic appearance presents a risk of severe injuries, including burns, weeping, sores, oozing, scarring, and other permanent skin reactions therefore giving rise to pain and suffering, debilitation, and the need for medical treatment, including possible surgery and further complications, and therefore was not safe for use by Plaintiffs or other consumers.

128.   Defendants failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the product.

129.   Defendants failed to exercise reasonable care in the patch test they chose to include with the product, and further failed to exercise reasonable care in the instructions as

to how to conduct the patch test, all as set forth above in this Complaint.

130.   Despite the fact that Defendants knew or should have known that Just For Men® could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment including possible surgery and further complications, Defendants continued to market Just For Men® as safe and effective hair dye.

131.   Despite the fact that Defendants knew or should have known that Just For Men® could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, including possible surgery and further complications, Defendants failed to use ordinary care in warning Plaintiffs and other consumers of this risk.

132.   As a direct and proximate result of Defendants' negligence, each Plaintiff has suffered significant damages exceeding the minimum amount required for diversity jurisdiction, including but not limited to physical injury, pain and suffering and will continue to suffer such damages in the future.

133.   Defendants' actions and omissions were malicious, wanton, oppressive, and/or reckless.

## COUNT V
## BREACH OF EXPRESS WARRANTY

134.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

135.   Defendants expressly warranted that Just For Men® was a safe and effective hair dye.

136.   Defendants expressly warranted that their product was safe and effective and that Just For Men® products "are backed by over three decades of research and have delivered great results over 50 million times."

137.    The Just For Men® manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to each individual Plaintiff when used as recommended and directed.

138.    As a direct and proximate result of Defendants' breach of warranty, each Plaintiff has suffered harm, damages, and economic loss exceeding the minimum amounts for diversity jurisdiction and will continue to suffer such harm, damages, and economic loss in the future.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

139.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

140.    When Defendants designed, manufactured, marketed, sold, and distributed Just For Men® for use by Plaintiffs, Defendants knew the intended use of Just For Men® and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling, and marketing were sufficient.

141.    Plaintiffs each individually and reasonably relied upon the skill and judgment of Defendants as to whether Just For Men® was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

142.    Contrary to such implied warranty, Just For Men® was not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous and defective as described above. When used as directed on the label, the product was not safe for the ordinary use for which it was sold, as it presented a substantial risk of injury to Plaintiffs and, in fact, injured Plaintiffs.

143.    As a direct and proximate result of Defendants' breach of warranty, each Plaintiff has individually suffered harm, damages and economic loss exceeding the minimum amount for diversity jurisdiction and will continue to suffer such harm, damages

and economic loss in the future.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION AND FRAUD**
**(AGAINST COMBE INCORPORATED ONLY)**

144.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

145.   As set forth in this Complaint, Combe Incorporated made multiple material misrepresentations concerning the safety and effectiveness of Just For Men® hair dye, and minimized and downplayed those risks it chose to disclose.

146.   For instance, Combe Incorporated claims that Just For Men® products "are backed by over three decades of research and have delivered great results over 50 million times." This material misrepresentations made by Combe Incorporated is false, as evidenced by the extreme number of adverse reactions to its Just For Men® products by consumers, including Plaintiffs. When it made this misrepresentation Defendant Combe Incorporated had received hundreds or thousands of reports indicating that people had been injured by Just for Men, it had been sued by thousands of injured consumers, it was aware of hundreds of reports on consumer web sites alleging injuries from Just for Men, and it had reviewed medical and scientific literature associating PPD with the types of injuries that Plaintiffs suffered after using Just for Men.

147.   When Combe Incorporated made these material misrepresentations, it knew they were false, and Combe Incorporated made the material misrepresentations recklessly.

148.   Combe Incorporated had actual knowledge based upon consumer complaints, lawsuits by hundreds of injured consumers, studies, published reports, and clinical experience that Just For Men® created an unreasonable risk of serious bodily injury, yet Combe Incorporated misrepresented to Plaintiff that Defendants' hair dyes were safe and met all applicable design and manufacturing requirements.

149. Combe Incorporated made these false, material misrepresentations with the intention of inducing buyers, including Plaintiffs, to act by purchasing Just For Men®.

150. Combe Incorporated induced Plaintiffs to purchase Just For Men® by appealing to their desire to improve their appearance.

151. Each individual Plaintiff acted in justifiable reliance on these material representations made by Combe Incorporated in that he purchased Just For Men® specifically under the belief that the product would provide the claimed cosmetic benefits if used in the manner directed by the labeling.

152. Instead, as a direct and proximate result of Combe Incorporated's fraudulent and/or negligent actions and omissions, Plaintiffs used Just For Men® and suffered harm, damages, and economic loss exceeding the minimum amount required for diversity jurisdiction, and will continue to suffer such harm, damages, and economic loss in the future.

153. Combe Incorporated's actions and omissions as identified in this Complaint demonstrate a flagrant disregard for human life.

## COUNT VIII
## New York General Business Law §§ 349 - 350

154. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

155. Defendants' advertising and marketing scheme for Just For Men® was false, misleading, unfair and unlawful.

156. At all relevant times, Defendants manufactured and distributed Just For Men® for use by the public and portrayed it as safe and effective.

157. Defendants hired consultants and companies to scrub injury reports from the Just for Men website, censoring any negative reviews of the products that used words like,

for instance, "burns," "bumps," "skin irritation," "blisters," and "rashes" further concealing from customers the risk of injury in using Just For Men® hair dye.

158.    Defendants knew, or should have known, about the risks associated with Just For Men®, including that the use of Just For Men® was not safe, that Just For Men® had given countless numbers of men severe chemical burns, and that safer alternative dyes to PPD were available for use in Just For Men® products.

159.    Defendants knew or should have known that the unreasonable level of PPD in Just For Men® products can cause, among other adverse reactions, burns, blisters, rashes, anaphylaxis and death yet omitted proper warnings of such risks of use to consumers on their product labels, inserts, or marketing materials.

160.    Despite this knowledge Defendants continued to market and advertise Just For Men® as safe by claiming, among other things, that Just For Men® products are backed by "three decades of research and have delivered great results over 50 million times."

161.    Plaintiffs were misled by Defendants' representations and omissions concerning the safety of Just For Men® products. Had Plaintiffs known that the risk of injury in using Just For Men® was so substantial, they would have chosen not to purchase it or use it.

162.    However, believing that the product was safe because it was backed by "three decades of research and have delivered great results over 50 million times," and due to the omission of proper warnings, Plaintiffs bought the product, used the product, and were severely injured by the product's unreasonably dangerous levels of PPD.

163.    Because Defendants knew that Just For Men® products were unreasonably unsafe and nevertheless marketed them to the public as being vigorously tested and researched, Defendants willfully and knowingly violated sections 349 and 350 of the New York General Business Law. As such, Plaintiffs are entitled to treble damages.

## PRESERVATION OF CLAIMS

164.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

165.   Many states have recently enacted tort reform statutes with "exclusive remedy" provisions. Courts have yet in full to determine whether these exclusive remedy provisions eliminate or supersede state common law claims and to what extent. If during the pendency of this action this Court makes any such determination, Plaintiffs hereby specifically make claim to and preserve any state law claim based upon any exclusive remedy provision, under any state law this court may apply, to the extent not already alleged above.

166.   To the extent that Defendants may claim that one or more of Plaintiffs' claim are barred by the applicable statute of limitations, Plaintiffs assert that the statute of limitations has been tolled by, inter alia, Defendants' concealment of the dangers of the product, Plaintiffs' discovery that their injuries were caused by Defendants' defective product and failure to properly and adequately warn of the products' risks, all as more fully set forth in this Complaint, after the injury sustained by Plaintiffs. Moreover, the statute of limitations has been tolled by the pendency of class actions asserting claims on behalf of consumers who have been injured by Just for Men.

## JURY DEMAND

167.   Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

168.   Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and order that Defendants pay:

   a.   Actual damages to Plaintiffs;

   b.   Punitive, statutory, and treble damages, as allowable by law, to Plaintiffs;

    c.   Pre- and post-judgment costs, interest, and attorneys' fees;

    d.   Such other and further relief as this Court may deem appropriate and equitable.

DATED:      New York, New York
              September 12, 2019

                                 Respectfully submitted,


                                 SQUITIERI & FEARON, LLP

                               By:    /s/     Stephen J. Fearon, Jr.
                                            Stephen J. Fearon, Jr.

                               STEPHEN J. FEARON, JR.
                               32 EAST 57TH STREET, 12TH FLOOR
                               NEW YORK, NEW YORK 10022
                               TELEPHONE:   (212) 421-6492
                               FACSIMILE:   (212) 421-6553
                               STEPHEN@SFCLASSLAW.COM


                               Attorney for Plaintiffs